

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00146-CV

THOMAS A. WILDER, DISTRICT
CLERK

APPELLANT

V.

ODELL CAMPBELL, THOMAS RAY
ROBERTSON, SHAWNTA RENEA
COLEMAN, SCOTT WIERNIK,
TAIRHONDA MCAFEE, MARYBETH
LYNN JEWELL, AND DIANA J.
NAJERA

APPELLEES

----------

## FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Appellant Thomas A. Wilder, the district clerk of Tarrant County (the clerk), appeals from the trial court's temporary injunction barring him from collecting court costs from indigent parties "unless there were specific findings expressly stated in a final judgment or order providing that the indigent party's action

resulted in monetary award and that the monetary award was sufficient to reimburse costs." We vacate the trial court's temporary injunction and dismiss the case.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

Appellees[1] were divorce petitioners in actions filed in five of the seven family district courts in Tarrant County. Each Appellee filed an affidavit of indigency, which was either uncontested or the subject of a withdrawn or denied contest; thus, each Appellee was entitled to proceed in the divorce actions without payment of costs. See Tex. R. Civ. P. 145. After the respective family district court entered a final divorce decree, the clerk issued a bill of costs to each Appellee. When Appellees questioned the bills based on their status as indigents, the clerk relied on language included in each final divorce decree that each party would bear their own costs.[2] Indeed, each final divorce decree

---

[1]Appellees are Diana J. Najera, Scott Wiernik, Tairhonda McAfee, Marybeth Lynn Jewell, Odell Campbell, Shawnta Renea Coleman, and Thomas Ray Robertson. Appellees are separated into two groups—one group containing four appellees, the other group containing three appellees—and each group is represented by its own counsel. We will treat these groups as one party; thus, any argument raised by one group of appellees will be considered to have been raised by both.

[2]The dissenting opinion states that the costs assessments were in "form[]" divorce decrees and were "boilerplate adjudications of costs." However, only two of the seven decrees at issue are on a form, and both of these decrees were signed by the petitioner and included an acknowledgement that the petitioner "agrees to the terms of this decree."

2

recited either (1) "costs of Court are to be borne by the party who incurred them" or (2) "[t]he Husband will pay for his court costs [and] the Wife will pay for her court costs." The final divorce decrees show that Appellees[3] agreed to the substance of all terms, including the costs language. However, none of the final divorce decrees at issue included specific findings that the litigants were "able to afford costs" after previously being found indigent. Tex. R. Civ. P. 145(d).

Relying on the costs language in the final divorce decrees, the clerk issued the bills of costs to Appellees. *See* Tex. Fam. Code Ann. § 6.708(a) (West Supp. 2013), § 106.001 (West 2014). Although the final divorce decrees at issue were signed between November 24, 2008 and August 8, 2012, the clerk issued the bills of costs during the three-month period of May 7 to August 10, 2012. The clerk also issued certifications of default payment in each case and threatened to issue execution for the costs. *See* Tex. R. Civ. P. 129, 149. None of the appellees had appealed from the final divorce decrees.

### B. PROCEDURAL BACKGROUND

In February 2013 and at least six months after the clerk issued the disputed bills of costs, Appellees filed two petitions against the clerk in civil district court seeking to enjoin him from assessing costs against Appellees and

---

[3]The final divorce decree involving Wiernik does not include a page signed by the litigants.

other, similarly situated litigants.[4] After the two sitting judges recused themselves, the regional presiding judge assigned a senior district judge to hear one of the petitions.[5] *See* Tex. R. Civ. P. 18b. The assigned judge consolidated the petitions on the parties' agreed motion. *See* Tex. R. Civ. P. 174(a).

On April 15, 2013, the trial court held an evidentiary hearing on the requests for a temporary injunction. That same day, the trial court[6] entered an order temporarily enjoining the clerk from attempting to collect costs from indigent litigants:

> 1. [Appellees] have demonstrated a probable right to prevail on the trial of this cause on their claims that:
>
> > a. [The clerk] has a policy, practice, and procedure that his office will seek to collect costs against parties who have filed an affidavit on indigency under Tex. R. Civ. P. 145 where the affidavit was not contested, where the contest was denied, or where the contest was withdrawn based on judgments or final orders in which there was no specific finding expressly stated in the judgment or final order that the indigent party's action resulted in a monetary award, and no specific finding

---

[4]One petition was styled "Petition for Writ of Mandamus, Application for Temporary Restraining Order, Petition for Writ of Temporary and Permanent Injunction, and Petition for Declaratory Judgment," while the other was styled "Original Petition for Declaratory Judgment, Application for Temporary Restraining Order, Temporary Injunction, Permanent Injunction, and Writ of Mandamus."

[5]The record does not include an assignment order for the other petition in which the trial court also recused itself.

[6]For the remainder of this opinion, "the trial court" will refer to the court issuing the preliminary injunction against the clerk. "Family district court" will refer to the court entering the final divorce decree at issue.

4

expressly stated in the judgment or final order that there was sufficient monetary award to reimburse costs;

b.      The collection of costs policy, practice and procedure of [the clerk] described above violated Tex. R. Civ. P. 145;

2.      [The clerk] intends to continue enforcing the collection of costs policy, practice, and procedure described above against [Appellees];

3.      If [the clerk] carries out that intention, he will thereby tend to make ineffectual a judgment in favor of these [Appellees], in that [the clerk] has threatened to issue an execution for costs to levy upon [a] sufficient amount of [Appellees'] property to satisfy the alleged debts; and

4.      Unless [the clerk] is enjoined from carrying out the collection of costs policy, practice, and procedure described above, [Appellees] will suffer irreparable harm without any adequate remedy at law, including but not limited to the fact that the applicable trial courts no longer have plenary power and all appeal deadlines had passed prior to the first collection letter being sent.

The trial court further set a trial date and ordered that the temporary injunction would remain in effect until it entered a final order.  *See* Tex. R. Civ. P. 683.  The clerk filed a notice of accelerated appeal from the trial court's interlocutory order granting the temporary injunction.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2013); Tex. R. App. P. 28.1(a).

In three issues, the clerk asserts that the trial court erred because (1) any injunction was required to be tried in the court that rendered the judgment—here, the respective family district court; (2) Appellees failed to certify a class, which is a prerequisite for the trial court to enjoin the clerk as to similarly-situated persons; and (3) Appellees had an adequate remedy at law—a motion to re-tax costs filed

5

in the family district court that entered the final divorce decree.[7] The clerk does not argue that the required findings of rule 145(d) that Appellees were "able to afford costs" were made or that Appellees were not, in fact, indigent.[8] Tex. R. Civ. P. 145(d); *see also* Tex. R. Civ. P. 141 (allowing court, "for good cause," to adjudge costs other than "as provided by law or these rules").

## II. STANDARD AND SCOPE OF REVIEW

A temporary injunction is warranted if the movant shows (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 SW.3d 198, 204 (Tex. 2002) (op. on reh'g). In short, the purpose of a temporary injunction is to preserve the status quo pending trial. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993).

We review an order granting a temporary injunction under an abuse-of-discretion standard, which mandates reversal only if the trial court acted without

---

[7]In his brief and at oral argument, the clerk asserted that if Appellees filed motions to re-tax costs in the appropriate family district court, such motions would be timely filed.

[8]Rule 145(d) provides that a litigant's indigency status may be withdrawn if the litigant's circumstances change:

> If the court finds at the first regular hearing in the course of the action that the party (other than a party receiving a governmental entitlement based on indigency) is able to afford costs, the party must pay the costs of the action. Reasons for such a finding must be contained in an order.

Tex. R. Civ. P. 145(d).

reference to any guiding rules or principles. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding); *Burgess v. Denton Cnty.*, 359 S.W.3d 351, 356–57 (Tex. App.—Fort Worth 2012, no pet.). Our scope of review is limited to the validity of the order granting the temporary injunction. *Burgess*, 359 S.W.3d at 356. Therefore, we are not to determine the merits of the movant's underlying claims. *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex. 1978).

The clerk argues in his first issue, however, that the trial court did not have jurisdiction to enter the temporary injunction because it did not enter the judgments sought to be executed. Whether the trial court has subject-matter jurisdiction is an issue of law that we review de novo.

## III. TRIAL COURT'S JURISDICTION TO ENTER TEMPORARY INJUNCTION

To support its jurisdictional argument, the clerk relies on section 65.023(b), which provides that "[a] writ of injunction granted to stay proceedings in a suit or execution on a judgment must be tried in the court in which the suit is pending or the judgment was rendered." Tex. Civ. Prac. & Rem. Code Ann. § 65.023(b) (West 2008). Because this provision controls venue and jurisdiction for a suit requesting an injunction to stay execution of a facially-valid judgment, the clerk asserts that the trial court did not have subject-matter jurisdiction to temporarily enjoin the clerk's efforts to collect costs from Appellees. *See McVeigh v. Lerner*, 849 S.W.2d 911, 914 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

Appellees stated at oral argument that the strongest case supporting their argument that the trial court had jurisdiction to enter the injunction is *Carey v.*

7

*Looney*, 251 S.W. 1040 (Tex. 1923). The supreme court in *Carey* interpreted the predecessor statute to section 65.023(b) and held that injunctions may, in some instances, be issued by a court that did not enter the complained-of judgment:

> [I]f the court in which the injunction suit is brought has general jurisdiction over the subject-matter, and the relief may be granted, independently of the matters adjudicated in the suit whose judgment or processes thereunder are sought to be restrained, the statute has no application.

*Id.* at 1041. Appellees assert that because the trial court had general jurisdiction over their request for a declaratory judgment against the clerk, the trial court could issue the injunction. However, *Carey* is not as broad as Appellees urge. The supreme court specifically stated that the predecessor statute to section 65.023(b) mandated that an injunctive request had to be filed in the court that issued the judgment "[i]f, in order to grant the relief, it is necessary to set aside or modify the judgment, *or to regulate the processes issued thereunder*, and the attack is made by a party to the judgment." *Id.* (emphasis added). Here, the trial court, in order to grant the requested relief, would clearly have to "regulate the processes" by which the clerk collects the costs from parties to the judgments—Appellees—under the family district courts' final divorce decrees.

Appellees further argue that because they did not appeal from their final divorce decrees,[9] section 65.023(b) is inapplicable. But as the supreme court

---

[9]Indeed, Appellees clearly state that they "are not challenging the individual court judgments" and that even if they wanted to appeal the clerk's attempts to execute on his bills of costs, "that opportunity was foreclosed due to the loss of plenary power by the trial court."

has made clear, section 65.023(b) is "mandatory, requiring the injunction suit to be returnable to and tried in the court rendering the judgment, if the attack is made by a party to the judgment and if, in order to grant the relief, it is *necessary to regulate the processes issued under the judgment.*" *Evans v. Pringle*, 643 S.W.2d 116, 118 (Tex. 1982) (emphasis added). In *Evans*, two criminal defendants failed to appear for trial, and the criminal trial court with jurisdiction over the defendants' indictments entered judgments of forfeiture against the defendants' sureties. *Id.* at 117. The sureties appealed the forfeiture judgments, and the court of criminal appeals affirmed. *Id.* The appropriate clerk then attempted to execute on the forfeiture judgments to collect post-judgment interest even though the forfeiture judgments did not provide for post-judgment interest. *Id.* The sureties brought a civil action seeking to enjoin the sheriff from levying on their property to satisfy the writs of execution. *Id.* The supreme court held that the sureties were required, under the predecessor statute to section 65.023(b), to seek relief in the criminal court that rendered the judgment that was the subject of the sheriff's collection efforts. *Id.* at 118.

Appellees attempt to distinguish *Evans* and point to our later decision in *Hughes v. Morgan*, 816 S.W.2d 557 (Tex. App.—Fort Worth 1991, writ denied), to support their argument that section 65.023(b) does not apply once a judgment is final for appellate purposes. In *Hughes*, a criminal district court entered a default judgment against a bond surety in a bond-forfeiture proceeding. *Id.* at 558. The surety appealed the judgment and filed a supersedeas bond. *Id.* After

9

the clerk attempted to disqualify the surety from acting in that capacity in other cases based on the default judgment, a civil district court enjoined the enforcement of the judgment. *Id.* We applied section 65.023(b) and held that the civil district court did not have jurisdiction "to affect a judgment on appeal from another court." *Id.* at 559. Although the judgment in *Hughes* was appealed, the judgment in *Evans* was not on appeal and, in fact, the appellate timetable had expired. The dispositive issue in both *Evans* and *Hughes* was the power of one court to enjoin the enforcement of the judgment of another court. *Evans*, 643 S.W.2d at 118; *Hughes*, 816 S.W.2d at 559. Indeed, *Hughes* expressly relied on *Evans* and held that

> the provisions of [section 65.023(b)] are mandatory and an injunction suit is returnable to and must be tried 'in the court rendering the judgment, if the attack is made by [a] party to the judgment and if, in order to grant the relief, it is necessary to regulate the processes issued under the judgment.'

*Hughes*, 816 S.W.2d at 559 (quoting *Evans*, 643 S.W.2d at 118). Thus, *Evans* mandates that the trial court that renders the judgment is the only court that may enjoin its execution or regulate the judgment's processes even if plenary power is absent.[10] *Evans*, 643 S.W.2d at 117–18. We sustain the clerk's first issue.

---

[10]Appellees argue that section 65.023(b) is "limited to efforts to stay proceedings in a suit or execution on a judgment," neither of which is present in this case. But the action sought to be enjoined—the collection of costs provided in the judgment—is squarely within the purview of section 65.023(b), i.e., execution on a judgment.

10

Before concluding, we emphasize that courts are to be open to all, "including those who cannot afford the costs of admission." *Higgins v. Randall Cnty. Sheriff's Office*, 257 S.W.3d 684, 686 (Tex. 2008) (citing open-courts provision of Texas Constitution). Our decision today does not retreat from this tenet or minimize its importance. Indeed, courts should tread lightly in this arena and carefully interpret the rules and statutes regarding indigency status and the award of costs. Our ultimate holding under section 65.023(b) is merely one of jurisdiction and venue, not access: the trial court did not have jurisdiction to enjoin the processes by which the family district courts' final divorce decrees were executed by the clerk.

The dissenting opinion's efforts to protect indigent parties' access to the courts and discourage the clerk's costs-collection efforts from indigent litigants are laudable, and we do not necessarily disagree. However, we are limited by the scope and standard of our review of the trial court's injunction—which expressly prohibit a determination of the merits of the dispute—and by our inability to address issues that are not properly before us based on the trial court's lack of subject-matter jurisdiction. In short, we cannot address the propriety of the clerk's admitted policy of attempting to collect costs from indigent parties in the absence of the trial court's specific findings under rule 145(d). Accordingly, the dissenting opinion's discussion of the propriety of the clerk's policy is beyond the scope of our review given the procedural posture of this accelerated appeal. Any protracted discussion of each divorce decree, each

11

costs award, the rules applicable to indigent parties, and the propriety of the clerk's execution on judgments involving indigent parties would be premature, advisory, and not necessary to the disposition of this appeal. *See* Tex. R. App. P. 47.1; *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Therefore, we are not ignoring case law applicable to indigent litigants as the dissent suggests. We are simply deciding the preliminary and operative question of whether the trial court had jurisdiction over the subject matter of Appellees' petitions. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (noting if court does not have jurisdiction, its opinion addressing any issues other than jurisdiction is advisory); *Sw. Bell Tel., L.P. v. Ballenger Constr. Co.*, 230 S.W.3d 489, 491–92 (Tex. App.—Corpus Christi 2007, no pet.) (recognizing trial court's jurisdiction over case or controversy must first be addressed before merits of appeal are reached to avoid appellate court rendering advisory opinion). We hold it did not under section 65.023(b).

## IV. CONCLUSON

Because the trial court did not have subject-matter jurisdiction to enjoin the clerk's efforts to execute on judgments entered by family district courts, we vacate the trial court's order granting Appellees a temporary injunction and dismiss the case. *See* Tex. R. App. P. 43.2(e), 43.3. Based on this conclusion, we do not need to address the clerk's remaining issues. *See* Tex. R. App. P. 47.1.

12

/s/ Lee Gabriel
LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

GARDNER, J., filed a dissenting opinion.

DELIVERED:  April 3, 2014